```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/30/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NOEL CORDERO,

                                 Plaintiff,

        -against-

KILOLO KIJAKAZI,

                             Defendant.

-----------------------------------------------------------------X

23-CV-00995 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Noel Cordero seeks judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for supplemental security income ("SSI") under the Social Security Act. See 42 U.S.C. § 405(g). Cordero moved for judgment on the pleadings, and the Commissioner filed a brief in opposition.[1] Cordero's motion is DENIED.

## BACKGROUND

### I. Administrative History

      Cordero applied for SSI and disability insurance benefits ("DIB") on June 21, 2019. Administrative Record ("R.") 94. He initially alleged he was disabled beginning February 10, 2014, due to severe anxiety, panic attacks, bipolar disorder, depression, and severe alcoholism. R. 94. His application was first denied on September 5, 2019, and then again upon reconsideration on November 21, 2019. R. 110, 121. Cordero then requested a hearing before an administrative law judge ("ALJ") to review his case. R. 181. Cordero also requested to amend the alleged onset of disability from February 10, 2014, to June 21, 2019. R. 327. He appeared

---

[1] Cordero improperly styled his motion for judgment on the pleadings as a motion for summary judgment.

before ALJ Gitel Reich for a hearing on March 10, 2021. R. 66-93. At that hearing, Cordero requested to dismiss his DIB application and to proceed only on his SSI application. R. 71. The ALJ issued a decision on June 25, 2021, granting Cordero's requests to dismiss the DIB claim and to amend the alleged disability onset date, and denying his SSI claim. R. 28-46. On December 7, 2022, the Appeals Council denied Cordero's request for review of the SSI claim, making the ALJ's decision final. R. 1.

## II.     Cordero's Civil Case

Cordero filed his complaint on February 6, 2023, seeking review of the ALJ's decision. ECF No. 1; Plaintiff's Complaint ("Pl. C.") at 1. He requests that the Court vacate the decision and award him benefits or, in the alternative, remand the case for further proceedings. Id. The Commissioner answered by filing the administrative record. ECF No. 5. Cordero filed a motion for judgment on the pleadings, the Commissioner filed a brief in opposition, and Cordero filed a reply. ECF Nos. 12, 15, 16. Cordero argues that the ALJ erred by failing to follow the special technique for mental impairments and by not considering all relevant evidence when determining his Residual Functional Capacity ("RFC"). Plaintiff's Memorandum of Law ("Pl. Br.") at 13-24. The Commissioner responds that the ALJ followed the special technique, and that she properly evaluated the medical opinion evidence and medical records at all steps. See ECF No. 15, Defendant's Brief in Opposition ("Def. Br.") at 1-2.

On April 14, 2023, the parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 8.

## III.    Factual Background

Cordero was born in 1970 and was 48 years old at the time of the alleged onset of his disability in 2019. R. 13. He earned a bachelor's degree in theology from Fordham University. R.

1035. He started, but did not finish, a master's degree at Columbia University. R. 575. For one year in 2004, Cordero worked as a high school religious studies teacher. His next and most recent position was from 2009 to 2012 as an AT&T customer service representative. R. 1049.

### A.     Medical Evidence (Physical)

Cordero has a history of anemia, asthma, gastroesophageal reflux disease, dry eye syndrome, allergies, restless leg syndrome, pulmonary embolism, hernia, diverticulosis, and obesity. R. 395, 433, 851, 1126. Cordero did not receive medical treatment for any of these conditions during the period at issue, and there is no evidence that any of these conditions impaired Cordero's day-to-day functioning during that period.

### B.     Medical Evidence (Mental)

Since adolescence, Cordero has struggled with mental health issues and substance abuse. His first psychiatric hospitalization was at age 12 for anorexia. R. 1035. At age 15, he started abusing alcohol and had his first alcohol-related hospitalization. R. 1036, 1063. Cordero has been addicted to benzodiazepines for the last 27 years. R. 1037. He has been diagnosed with bipolar disorder, obsessive-compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), recurrent major depressive disorder, generalized anxiety disorder, alcohol abuse, and benzodiazepine abuse. R. 1030, 1063.

From June 2019 through April 2020 – the first ten months of the period at issue – Cordero repeatedly cycled through brief periods of sobriety, relapse, and inpatient substance abuse treatment. During these ten months, Cordero routinely rated as "severely depressed" on depression screening questionnaires, despite taking psychiatric medication and engaging in therapy. R. 1053, 1058, 1074, 1079, 1095, 1104. In August 2019, Cordero had "social anxiety bordering on the psychotic." R. 1084. In October 2019, Cordero went to the emergency room ("ER") because he had run out of Klonopin, was drinking excessively, and had "hit rock

3

bottom." R. 1124. Three months later, he was admitted to six weeks of inpatient substance abuse treatment because he could not "stop drinking alcohol on his own." R. 1185, 1838. Weeks after successful discharge from inpatient treatment, Cordero again went to the ER, this time with a plan to commit suicide after losing his psychiatric medication and relapsing on alcohol. R. 1553. After stabilizing in April 2020, Cordero was discharged from the hospital. R. 1602.

Treatment records show that from April 2020 until the ALJ's decision in June 2021, Cordero maintained sobriety. In May 2020, Cordero started working with Arms Acres' outpatient treatment program. R. 1865. Arms Acres routinely tested Cordero for alcohol and benzodiazepines, among other substances; all results were negative. R. 1866, 1867, 1871, 1872, 1874, 1876, 1888. During this period of sustained sobriety, Cordero continued to take psychiatric medication and engage in therapy. His mental health symptoms improved substantially. His depression improved, and at times, he reported no depressive symptoms. R. 1386, 1417, 1445, 1455, 1468, 1483, 1396, 1475. His mood and emotions stabilized, he slept better, and his aggression decreased. R. 1431, 1470, 1475, 1869, 1870.

Although Cordero's symptoms improved significantly with sobriety, they did not resolve completely. He continued to experience panic attacks, which resulted in four ER visits between October 2020 and March 2021. R. 1492, 1513, 1518, 1772. The last of these ER visits happened after Cordero ran out of his psychiatric medication. R. 1774. He also continued to experience the OCD-related urge to contact his ex-girlfriend. R. 1432, 1452, 1465, 1867. During this period, he reported loneliness, crying spells, anxiety, and difficulty concentrating. R. 1432, 1436, 1445, 1454, 1875. Despite the persistence of these symptoms, Cordero still described himself as "thriving" while sober and stated that he wanted "to continue living a sober life." R. 1869.

4

### 1.  Dr. Eleanor Murphy's Medical Opinion

SSA consultative psychologist Eleanor Murphy, Ph.D., conducted a one-time evaluation of Cordero on August 8, 2019. R. 1035. Dr. Murphy diagnosed Cordero with bipolar disorder, unspecified anxiety disorder, history of anorexia, and polysubstance use disorder. R. 1040. Cordero reported appetite changes, sleep disturbances, poor self-esteem, social withdrawal, depressed mood, anxiety, irritability, fear of judgment, difficulty concentrating, paranoia, and obsession with cleaning. R. 1036. Dr. Murphy found that Cordero had average cognitive function and no impairment in his ability to apply simple instructions, regularly attend work, take precautions, or maintain personal hygiene. R. 1038-1039. She found mild limitations in Cordero's ability to apply complex instructions, use judgment, and sustain concentration. Id. Dr. Murphy found moderate limitations in Cordero's abilities to regulate his emotions and interact adequately with others. Id. Dr. Murphy concluded that Cordero's difficulties were caused by "distractibility and lack of motivation," and that the results were "consistent with psychiatric, substance abuse, and cognitive problems." She opined that Cordero's limitations were not significant enough to interfere with his ability to "function on a daily basis." Id.

### 2.  Dr. Judith Shay's Medical Opinion

Judith Shay, M.D., became Cordero's treating psychiatrist on July 19, 2019. R. 1063. That day, Dr. Shay evaluated Cordero and diagnosed him with bipolar disorder, obsessive-compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), alcohol abuse, and benzodiazepine abuse. Id. Dr. Shay has prescribed Cordero various psychiatric medications, including Abilify, Lexapro, Vistaril, Lamictal, and Latuda. R. 1069-1070, 1104.

Dr. Shay evaluated Cordero on August 29, 2019, three weeks after Dr. Murphy's evaluation. R. 1043. She noted that Cordero's symptoms included "mood swings, paranoid ideas,

passive suicidal ideation," and "depressive symptoms alternating with grandiose ideas." Id. Cordero reported that while working at AT&T from 2009-2012, he was anxious, angry, had random outbursts, clashed with coworkers, couldn't tolerate criticism, was frequently late, often panicked, and was slow to learn new material. R. 1044-1045. Based on Cordero's reports from his past job, Dr. Shay found that Cordero had limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Id.

On October 24, 2019, Dr. Shay completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) for Cordero. R. 1163. She found some level of impairment in all categories. Id. She found that Cordero had mild impairments with understanding and carrying out simple instructions, as well as with making simple work-related decisions. Id. She found marked impairments with understanding and carrying out complex instructions, interacting appropriately with the public, supervisors, and coworkers, and appropriately responding to normal work situations. Id. She found extreme impairment in Cordero's ability to make judgments on complex work-related decisions. Id. Dr. Shay attributed Cordero's limitations to ADHD and anxiety, rather than alcohol and benzodiazepine abuse. Id. Cordero again reported that at his last job, he screamed at customers, alienated coworkers, was paranoid, struggled to retain information, constantly asked for help, and had issues with authority. R. 1164.

### C. The ALJ's Decision

The ALJ first evaluated the five steps considering Cordero's mental impairments, physical impairments, and substance abuse. The ALJ found that when using substances, Cordero was disabled. The ALJ then found that there was medical evidence of drug and alcohol addiction, and accordingly reevaluated the five steps to determine whether Cordero would still be disabled if he abstained from substance use.

At step one, the ALJ determined that Cordero had not engaged in any substantial gainful activity between the alleged onset date of June 21, 2019, and the date of her decision in June 2021. R. 31.

At step two, the ALJ found that Cordero had the following severe impairments: "depressive/bipolar disorders, anxiety disorder, and substance abuse disorder (alcohol and benzodiazepine) in partial remission." R. 31. The ALJ also found medically determinable impairments of ADHD, OCD, anemia, asthma, GERD, dry eye syndrome, allergies, and obesity, but ultimately determined that these were non-severe. Id. The ALJ found that even in the absence of substance use, Cordero's "depressive, anxiety, and bipolar disorders" were severe impairments. R. 39.

At step three, the ALJ determined that, both with and without substance use, Cordero's impairments did not meet or medically equal the severity of a listed impairment in the applicable regulations ("listings"). R. 32, 39-40; see 20 C.F.R. Pts. 416.920(d), 416.925, and 416.926. Specifically, the ALJ found the requirements of listings 12.04 and 12.06[2] were not met or medically equaled. R. 32, 39-40.

The ALJ established two separate RFCs for Cordero. The first RFC accommodated Cordero's impairments when using substances, and the second considered only Cordero's impairments that would remain if he were sober. R. 33-37, 40-44. The ALJ found that while using substances, Cordero possesses the RFC to perform medium work, as defined in 20 C.F.R. § 416.967(c), with the additional limitations that he can do "simple and routine work, with less than occasional contact with supervisors, coworkers, and the public, and no assembly-line type production." R. 33. The ALJ found that if Cordero were not using substances, his RFC would

---

[2] Respectively: "depressive, bipolar and related disorders" and "anxiety and obsessive-compulsive disorders."

change to allow for occasional contact with supervisors, and there would be no limitation on assembly-line type production. R. 40.

At step four, the ALJ found that Cordero had past relevant work as a "retail sales consultant." R. 38. The ALJ noted that the "*Dictionary of Occupational Titles* classifies this work as semi-skilled work." Id. The ALJ found that the demands of that role exceeded both of Cordero's RFCs, and that regardless of whether Cordero uses substances, he cannot perform his past relevant work. R. 38, 44.

At step five, the ALJ made two different determinations about whether there were jobs existing in significant numbers in the national economy that Cordero could perform: one for if Cordero were using substances, and one for if Cordero were sober. R. 38-39, 45. The ALJ found that if Cordero were using substances, there would be no jobs in the national economy that Cordero could perform. R. 39. However, the ALJ found that if Cordero were sober, he would be able to do the following unskilled jobs: automobile detailer, laborer, and industrial cleaner. R. 45. In reaching this conclusion, the ALJ relied upon the testimony of a vocational expert. Id.

The ALJ found that if Cordero were sober, he would be able to make a successful adjustment to work that existed in significant numbers in the national economy. Accordingly, she concluded that Cordero was not disabled during the period at issue. R. 45.

## DISCUSSION

**I.      Standard of Review**

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside only if it is based upon legal error, or it is not supported by

8

substantial evidence. Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Therefore, if substantial evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." (emphasis in original) (citations and internal quotation marks omitted)). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II.     Definition of Disability

A claimant is disabled under the Act if they demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

9

acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). A claimant will be found to be disabled only if their "impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. § 423(d)(2)(A).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 404.1520. The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. See id. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1 . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof at steps one, two, three, and four; the Commissioner bears the burden at step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013).

When an ALJ determines that a claimant is disabled, and there is medical evidence that the claimant has a substance abuse disorder, the ALJ must determine whether the claimant's substance abuse is a "contributing factor material to the determination of disability." SSR 13-2p, 78 Fed. Reg. 11939, 11941 (Mar. 22, 2013). Substance abuse is material when "the claimant

would not meet our definition of disability if he or she were not using drugs or alcohol." Id. The ALJ determines the materiality of a claimant's substance use by repeating the sequential evaluation process, this time considering only evidence of the claimant's symptoms in the absence of substance use. Id. If, after repeating the five steps, the ALJ finds that substance use is material to the determination of disability, then the claimant is not disabled. Id.

### III. Analysis

#### A. The Special Technique

Cordero argues that the ALJ did not properly apply the special technique for evaluating mental impairments at steps two and three. Pl. Br. at 18-19. He argues that the ALJ erred during both the first analysis (when considering Cordero's symptoms while abusing substances) and the second analysis (when considering only Cordero's symptoms while sober). However, any error in the first analysis was necessarily harmless. Error is harmless, and therefore does not warrant remand, where "application of the correct legal principles to the record could lead only to one conclusion." Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (citing Schaal v. Apfel, 134 F.3d 496, 504-05 (2d Cir. 1998)). After the first analysis, the ALJ found that Cordero was disabled when he was using alcohol and benzodiazepines. R. 39. Even if the ALJ made errors at this stage, the outcome without those errors would have been the same: a finding of disability in the context of substance abuse. Because any error during the first analysis was harmless, I only discuss below Cordero's arguments about errors during the second sequential five-step analysis.

#### 1. Step Two - Severity

At step two, the special technique requires the ALJ to rate the degree of a claimant's functional limitations in four areas to determine the severity of the claimant's mental impairments. 20 C.F.R. § 404.1520a(d); see Kohler v. Astrue, 546 F.3d 260 (2d Cir. 2008). The

11

four functional areas are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. Id. at § 404.1520a(c)(3). The ALJ is required to "document application of the special technique," including "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." Id. at § 404.1520a(e).

The ALJ did not properly follow the special technique when determining the severity of Cordero's mental impairments when sober. The ALJ found that Cordero's depressive, anxiety, and bipolar disorders are severe because "[t]he medical record establishes that even in the absence of substance use," those impairments "cause more than minimal functional limitations." R. 39. However, the ALJ did not discuss Cordero's ADHD and OCD symptoms in the absence of substance abuse, and she did not rate Cordero's functional limitations at this step. Id. This was error.

The ALJ's step two error is, however, harmless and does not warrant remand. When an ALJ finds some impairments severe and, in subsequent steps, considers the symptoms related to non-severe impairments, any error in the non-severity finding is harmless. See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (finding harmless error where the ALJ erroneously determined that the claimant's anxiety and panic attacks were non-severe but considered both conditions at subsequent steps). Here, the ALJ sufficiently considered Cordero's ADHD and OCD symptoms at subsequent steps. For example, the ALJ concluded at step three that Cordero had moderate limitations in concentration and managing himself. R. 39-40. When formulating the RFC, the ALJ implicitly considered those limitations, as well as Cordero's OCD-related urge to contact his ex-girlfriend, among other mental health symptoms. Id. Additionally, Cordero does

12

not argue that the ALJ should have found his ADHD and OCD to be severe, and he does not put forth any evidence showing that those impairments are severe. Bowen v. Yuckert, 482 U.S. 137 (1987). The ALJ's step two error is therefore harmless.

### 2. Step Three – The Listings

The ALJ correctly applied the special technique when evaluating whether Cordero's mental impairments when sober met or equaled listings 12.04 and 12.06. At step three, the special technique requires the ALJ to compare the rated functional limitations and the medical findings to the criteria in the listings. Id. § 404.1520a(d)(2). The ALJ properly rated Cordero's functional limitations on a five-point scale. R. 39. She concluded that, based on Cordero's mental health records, he has moderate limitations in every category of functional limitation (understanding, concentrating, managing himself, and interacting with others) when abstaining from substance use, and that these moderate limitations do not meet or equal listings 12.04 or 12.04. Id. The ALJ had properly found during the first analysis that, when abusing substances, Cordero had marked limitations in interacting with others, and moderate limitations in the other three functional areas. R. 32-37. Therefore, the ALJ concluded that when sober, Cordero's ability to interact with others improved slightly, and that his other functional limitations did not worsen.

The ALJ's discussion of the mental health records from Cordero's period of sobriety show that her step three determination was supported by substantial evidence. The ALJ considered reports from Cordero's treatment teams at Montefiore and Arms Acres, medical records of emergency room visits, Dr. Murphy's medical opinion, and Cordero's testimony to assess his limitations while sober. R. 40-44. The ALJ reasoned that Cordero's ability to interact with other improved because Cordero testified that with sobriety, "he does not have difficulty interacting with family, and he does not feel social anxiety or discomfort unless he is in a setting

with at least four to five people." R. 39-40. She also noted that, while sober, Cordero "get[s] along well with his family" and feels less irritable and aggressive. R. 41. As to Cordero's understanding, concentration, or self-management limitations, the ALJ noted that while sober, Cordero feels "more emotionally balanced" and experiences "less anxiety and depression, and . . . less obsessive compulsive urges to call his former girlfriend." R. 40. The ALJ's thorough discussion of the medical records makes clear that none of Cordero's mental health symptoms worsened with sobriety. Given that, the ALJ properly found that Cordero's functional limitations are at most moderate.

To support his argument that the ALJ should have found that his symptoms met listings 12.04 and 12.06, Cordero cites only Dr. Shay's assessments. Pl. Br. at 13-17. This argument is without merit because the ALJ properly found that Dr. Shay's medical opinion was "unpersuasive for several reasons." R. 43. An ALJ should determine the persuasiveness of a medical opinion based on the opinion's "supportability," its "consistency," the "relationship" of the medical source and the claimant, the source's "specialization," and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(1)-(5). The most important factors are supportability and consistency. Id. §§ 404.1520c(b)(2), (c)(1), (c)(2). Here, the ALJ found that Dr. Shay's evaluations were based primarily on Cordero's reports from his job at AT&T that he left in 2012, rather than observations of Cordero at the time of the evaluations. The ALJ accordingly found that Dr. Shay's opinions had low supportability. R. 43. For consistency, the ALJ found that Dr. Shay's opinions were consistent with other reports of Cordero's functional assessment in late 2019, but that they were not consistent with the longitudinal record. Id. The ALJ also noted that this evaluation took place only one month after Cordero started treatment for his bipolar disorder,

and that Dr. Shay was still adjusting his medications. Id. Based on substantial evidence, the ALJ found that Dr. Shay's medical opinions were not persuasive.

### A.     Residual Functional Capacity

#### 1.     Functional Limitations

Cordero argues that the final RFC does not adequately accommodate his moderate limitations in concentration and self-management. Plaintiff's Reply Memorandum of Law ("Pl. Rep. Br.") at 1-5. Cordero correctly notes that the ALJ did not explicitly mention those limitations when formulating the final RFC. Id. at 2. It is not necessary, though, for an ALJ to explicitly mention a claimant's functional limitations when formulating the RFC. Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) ("[R]emand is not necessary merely because an explicit function-by-function analysis was not performed."); Peryea v. Comm'r of Soc. Sec., No. 5:13-cv-0173 (GTS) (TWD), 2014 WL 4105296, at *10 (N.D.N.Y. Aug. 20, 2014) ("There is no requirement that an ALJ use the same language from step two or three in the RFC analysis, so the absence of the words 'concentration, persistence, or pace' in the ALJ's RFC assessment is not *per se* error."); see also Whipple v. Astrue, 479 F. App'x 367 (2d Cir. 2012) (summary order) (explaining that the four functional limitation categories need not be mentioned at the RFC stage because they "are only to be applied in determining the severity of a mental impairment"). Remand on this basis is appropriate only "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Cichocki, 729 F.3d at 177; see also McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (explaining that an ALJ need not "explicitly include [Plaintiff's] non-exertional functional limitations" in the RFC analysis, as long as the analysis affords "an adequate basis for judicial review," applies "the proper legal

15

standards," and is "supported by substantial evidence such that additional analysis would be unnecessary or superfluous").

The final RFC limited Cordero to "simple and routine work, with occasional contact with supervisors, and less than occasional contact with co-workers and the public." It was supported by substantial evidence, even though the ALJ did not explicitly discuss all of Cordero's functional limitations at this stage. R. 40. An RFC that limits a claimant to "simple and routine work" adequately accommodates moderate (and even marked) limitations in concentration and self-management. See, e.g., Shannon H. v. Comm'r of Soc. Sec., No. 5:21-cv-878, 2023 WL 246841, at *7 (N.D.N.Y. Jan. 18, 2023) ("[C]ourts have repeatedly concluded that an RFC that limits a plaintiff to simple, routine work sufficiently accounts for moderate limitations in concentrating, persisting, and maintaining pace."); Sarah R. v. Kijakazi, No. 20-cv-6739, 2022 WL 2704528, at *3 (W.D.N.Y. July 12, 2022) ("[M]oderate limitations in areas such as attention and concentration . . . are sufficiently accounted-for by limitations to unskilled work involving only simple, routine tasks."); Hill v. Comm'r of Soc. Sec., No. 18-cv-1161L, 2020 WL 836386, at *4 (W.D.N.Y. Feb. 20, 2020) (holding that an RFC limiting a claimant to "simple, routine and repetitive tasks, and simple work-related decisions, and to only occasional interaction with coworkers and the public" "adequately accommodate[s] marked limitations in a claimant's ability to adapt or manage oneself"). Because the final RFC limited Cordero to "simple and routine work," the ALJ implicitly considered Cordero's limitations in concentration and self-management, and the RFC sufficiently accommodates those limitations. Additionally, Cordero bears the burden of proving that a more restrictive RFC is appropriate. Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018). Cordero does not point to any evidence in the record that

contradicts the final RFC, and he does not argue that the ALJ omitted any specific RFC limitations. He therefore fails to meet his burden.

Similarly, Cordero argues that because the ALJ's hypothetical questions to the vocational expert ("VE") did not explicitly mention his moderate limitations in concentration and self-management, the ALJ improperly relied on the VE's testimony. Pl. Rep. Br. at 5-7. "When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony." Snyder v. Colvin, 667 F. App'x 319, 321 (2d Cir. 2016). Additionally, an ALJ's hypotheticals need only "implicitly account for a claimant's limitations in concentration." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The final RFC implicitly accounted for Cordero's concentration and self-management limitations and was supported by substantial evidence. The ALJ's hypothetical questions properly mirrored that RFC, and so the ALJ did not err when she relied on the vocational expert's testimony.

### 2. Unskilled Work

Cordero argues that the ALJ erred by formulating a final RFC that allowed for unskilled work while finding that Cordero has moderate limitations in the four functional areas. Pl. Br. at 20-22. Moderate functional limitations do not "preclude the ability to perform unskilled work." Flake v. Comm'r of Soc. Sec., 7:15-cv-1128 (GTS) (WBC), 2016 WL 7017355, at *10 (N.D.N.Y. Nov. 10, 2016).

Additionally, Cordero cites no persuasive evidence to support his argument that he cannot do unskilled work. He relies entirely on Dr. Shay's October 2019 medical opinion. Pl. Br. at 22. As is explained above, the ALJ properly found that Dr. Shay's opinion was not persuasive.

Because Cordero puts forth no other evidence demonstrating that he cannot do unskilled work when sober, he fails to meet his burden to establish the need for a final RFC that limits unskilled work. Smith, 740 F. App'x at 726.

### 3. Obesity

Cordero argues that the ALJ erred by failing to incorporate obesity-related limitations in the final RFC. Pl. Br. at 19-20. An RFC must include accommodations for obesity-related limitations if obesity impacts a claimant's "ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 84 Fed. Reg. 22924, 22925 (May 20, 2019). In all of Cordero's medical records, there is no evidence that obesity causes him any physical limitation. At the hearing, the ALJ asked Cordero why he feels he is unable to work. Cordero replied that he cannot work due to "bipolar II, ADHD, obsessive compulsive disorder, and major anxiety and depression," making no mention of any physical ailment or obesity. R. 76-77. Given the dearth of evidence of any obesity-related limitations, the absence of such limitations in the RFC is supported by substantial evidence.

## CONCLUSION

Cordero's motion is DENIED, and the action is DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 12.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:   October 30, 2023
         New York, New York